# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>    SCOTT WADE APPLEGATE<br><br>                  Debtor. | No. 04-20862<br>Chapter 7 |
| FRED C. WHITE,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTT WADE APPLEGATE,<br><br>    Defendant. | Adv. Pro. No. 04-2035 |

## M E M O R A N D U M

APPEARANCES:

                        F. SCOTT MILLIGAN, ESQ.
                        LITTLE & MILLIGAN, P.L.L.C.
                        Suite 130, 900 East Hill Avenue
                        Knoxville, Tennessee 37915
                        *Attorney for Scott Wade Applegate*


                        G. P. GABY, ESQ.
                        MILLIGAN & COLEMAN
                        Post Office Box 1060
                        Greeneville, Tennessee 38744-1060
                        *Attorney for Fred C. White*


**MARCIA PHILLIPS PARSONS**
**UNITED STATES BANKRUPTCY JUDGE**

In this adversary proceeding, the plaintiff seeks a determination that his state court judgment against the debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(A) & (B) or, alternatively, denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a)(3) & (5). Presently pending before the court is the debtor's motion for summary judgment on the nondischargeability claims. For the reasons that follow, the debtor's motion will be granted in part and denied in part. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I) & (J).

I.

On March 9, 2004, the debtor, Scott Wade Applegate, filed for relief under chapter 7 of the Bankruptcy Code. Thereafter, on June 10, 2004, the plaintiff, Fred C. White, commenced the present adversary proceeding. With regard to the nondischargeability aspects of his complaint, the plaintiff alleges that the debtor is indebted to him in the amount of $716,138.64, as evidenced by a September 24, 2003 judgment entered in the Chancery Court for the State of Tennessee, Third Judicial District at Greeneville. This indebtedness arose out of the debtor's guarantee of a $1.5 million short-term loan that the plaintiff made to one of the debtor's companies. According to the complaint, the debt is excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code because the debtor obtained the loan by false pretenses and false representations: the debtor represented that he had a commitment from a bank for permanent financing and that the plaintiff's loan would be repaid from the permanent financing in 90 days; in reliance on these representations, the plaintiff wired $1.5 million to an account designated by the debtor; the plaintiff later learned there was no commitment for the permanent financing; and the plaintiff would not have made the loan had he known that the debtor had no firm commitment for permanent financing. The complaint also

Main Document      Page 3 of 17

sets forth certain allegations regarding the debtor and his wife which suggest that they engaged in a sham divorce in 1999 although the significance of this alleged chicanery is not specified.[1] In an amendment to the complaint dated October 1, 2004, the plaintiff adds § 523(a)(2)(B) of the Bankruptcy Code as a basis for nondischargeability, asserting that on April 11, 2000, the debtor provided plaintiff with a materially false financial statement with the intent to deceive him and that plaintiff reasonably relied on the statement in making the loan.[2]

In his answer, the debtor admits the judgment held by plaintiff but denies any allegation of fraud. The debtor agrees that the loan was intended to be temporary and indicates that it was "the intention and hope" that a permanent loan would be obtained shortly thereafter, and that the plaintiff "was fully apprised of these facts and circumstances and agreed to proceed with the loan on this basis." The debtor denies the allegations regarding a false financial statement and asserts that such allegations should be stricken because the complaint fails to set forth with particularity the allegedly false, misleading or deceptive content of the

---

[1] The original complaint sets forth the additional allegations that before the loan was advanced, the debtor advised the plaintiff that the primary obligor on the debt would be Tennessee Aluminum Casting, LLC, but that after the loan was made, the promissory note forwarded to the plaintiff by the debtor listed Harrison Holding, LLC as the obligor, allegations that the debtor disputes in his answer. In his affidavit, attached as an exhibit to his response in opposition to the debtor's motion, the plaintiff states that he was mistaken at the time he filed the complaint and that he "did, indeed, have actual knowledge of the fact that the obligor of the loan was to be Harrison Holding, LLC." Accordingly, the court assumes that this is no longer a basis for the plaintiff's § 523(a)(2)(A) fraud claim.

[2] The plaintiff also subsequently filed a second amendment to his complaint on March 17, 2005, in which he alleges that the debtor assigned 15% of the membership units in Tennessee Aluminum Casting to secure the loan and warranted in writing that the shares were unencumbered which later proved to be false since 100% of the company units had previously been pledged to GE Capital to secure an $11.5 million contingent liability. Although the debtor has moved for summary judgment on all § 523 grounds, he did not address this allegation. Because the moving party must show an absence of evidence to support the non-moving party's case, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986), summary judgment on this issue will be denied.

statement. Lastly, the debtor asserts that the allegations concerning his spouse are irrelevant and should be stricken and disregarded by the court as scandalous or spurious.

In his motion for partial summary judgment filed April 15, 2005, the debtor asserts that there are no disputed issues of material fact and that he is entitled to summary judgment on plaintiff's nondischargeability claims. With regard to the alleged misrepresentation as to permanent financing, the debtor submits excerpts from plaintiff's deposition testimony wherein the plaintiff indicates that he has no information that there was, in fact, no loan commitment for permanent financing and that all he knows is that no permanent loan was funded and he was not paid. Based on this testimony, the debtor asserts that the plaintiff is unable to demonstrate the required elements of a false statement, the debtor's knowledge of a false statement, or intent to deceive. The debtor also makes the legal argument that the representation concerning the permanent financing was an oral statement respecting the debtor's financial condition, which is not actionable under either paragraph (A) or (B) of § 523(a)(2).

Regarding the allegations in the complaint as to the debtor's divorce and an alleged false financial statement, the debtor asserts that he has been able to flush out the plaintiff's charges through the discovery process. According to the debtor, plaintiff is maintaining that the debtor's financial statement failed to reveal the debtor's divorce and his obligations to his former wife under their marital dissolution agreement; the financial statement did not list an obligation of the debtor to Premier Custom Homes, LLC and overstated the values of the debtor's companies and real estate. While the debtor admits the failure to disclose the marital obligations to his former wife, he asserts that the omission is immaterial. As to the other alleged misstatements, the debtor asserts that the plaintiff is unable to establish that the financial statement was in fact false or that he relied on the financial statement, as shown by his deposition testimony.

The plaintiff has filed a response in opposition to the debtor's motion for partial summary judgment on May 27, 2005, which response is supported by the plaintiff's affidavit. He asserts that when all reasonable inferences are drawn in his favor, there is sufficient evidence to withstand summary judgment. The plaintiff also maintains that the debtor's alleged representation concerning permanent financing was not a statement respecting the debtor's financial condition.

II.

Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the [court] could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52. In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party. *See Spradlin v. Jarvis (In*

*re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 442-43 (citations omitted). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.,* 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 349 (6th Cir. 1998)).

### III.

Section 523(a)(2) of the Bankruptcy Code provides in pertinent part:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
 . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
    (B) use of a statement in writing—
        (i) that is materially false;
        (ii) respecting the debtor's or an insider's financial condition;
        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
        (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2).

"In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. Further, exceptions to discharge are to be strictly construed against the

creditor." *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir.1998) (internal citations omitted).

"Since subsection (B) of § 523(a)(2) covers only statements 'respecting a debtor's financial condition' and subsection (A) excludes such statements, the subdivisions 'are expressly mutually exclusive.'" *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003). Thus, "[i]f a 'statement of financial condition' is made, it may be false and made with intent to deceive, but if it is not made in writing, then it does not give rise to a claim of nondischargeability." *Cadwell v. Joelson (In re Joelson)*, 307 B.R. 689, 693 (B.A.P. 10th Cir. 2004). In recognition of this legal principle, the debtor argues that the alleged misstatement regarding the existence of a permanent loan commitment is a "statement respecting the debtor's . . . financial condition" which must be in writing to be actionable under § 523(a)(2).

The Bankruptcy Code does not define this term, nor has it been defined by the Sixth Circuit Court of Appeals. Lower courts disagree as to whether the phrase should be given a strict or liberal interpretation, and even when agreeing on the definition, have often reached seemingly irreconcilable results. *Compare In re Joelson*, 307 B.R. at 696 (utilizing a narrow interpretation "to cover statements made in the context of assessing overall creditworthiness, such as statements reflecting net worth or ability to pay," court concluded that the debtor's statement that "she had a ready source of repayment for the Plaintiff's loan" was a statement regarding financial condition) *with Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 615-16 (Bankr. D. Utah 2002) (applying "strict interpretation of §523(a)(2)(B) that requires a false written statement to describe the debtor's net worth, overall financial health, or ability to generate income," court held that a letter representing that the debtor had obtained a

7

credit line of $4.5 million was not a statement relating to financial condition). In light of this inconsistency, this court is somewhat reluctant to characterize any test adopted by it as "strict," "narrow," "liberal," or "broad." Nonetheless, after consideration of the cases which have addressed this issue, along with a review of the statute's legislative history, this court finds itself in agreement with the bankruptcy court in *Chivers*:

> [T]he better approach is the strict interpretation of § 523(a)(2)(B) that requires a false written statement to describe the debtor's net worth, overall financial health, or ability to generate income. It is the most consistent with the Supreme Court's interpretation of the statute, it is consistent with the history of the reason for the creation of the statute, [and] it strictly construes § 523(a)(2)(B) against the creditor and liberally in favor of the debtor . . . .

*In re Chivers*, 275 B.R. at 615-16. *See also Jokay Co. v. Mercado (In re Mercado)*, 144 B.R. 879, 885 (Bankr. C.D. Cal. 1992) ("The ordinary usage of 'statement' in connection with 'financial condition' denotes either a representation of a person's overall 'net worth' or a person's overall ability to generate income.").

When this standard is applied to the facts of the instant case, this court concludes that the alleged representation that the debtor had obtained permanent financing is not a statement respecting the debtor's financial condition under § 523(a)(2)(B). While the representation may bear on the debtor's ability to repay the plaintiff's loan, it provides no information as to the debtor's overall financial health or net worth or his overall ability to generate income. Rather than a statement regarding *the debtor's* financial condition, the representation is more accurately a statement regarding the loan itself. As such, it does not fall within the confines of § 523(a)(2)(B).

The debtor's alternative argument regarding the alleged permanent financing misrepresentation is that the plaintiff is unable to carry his burden of proof on this issue. The Sixth Circuit Court of Appeals has

explained that in order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
> (2) the debtor intended to deceive the creditor;
> (3) the creditor justifiably relied on the false representation; and
> (4) its reliance was the proximate cause of loss.

*In re Rembert,* 141 F.3d at 280-81. Citing the plaintiff's deposition testimony, the debtor argues that the plaintiff is not able to demonstrate the first two elements: a false representation knowingly or recklessly made by the debtor with the intent to deceive the creditor. The debtor quotes the following exchange in the plaintiff's March 29, 2005 deposition:

> Q   Okay. So do you have any information that Mr. Applegate was – misrepresented to you or told you incorrectly that he did – he said – you told me he told you he had a commitment. Do you know that he did not have a commitment when he said that?
> A   I do not know.
> Q   You do not know to this day?
> A   I do not know.

Echoing this colloquy, the plaintiff states in his affidavit submitted in opposition to the debtor's motion: "The circumstantial evidence I have that Mr. Applegate's statement to me that he had the commitment of the lender for permanent financing for ART was false is the fact that he did not receive those funds at the end of the 90-day term of my $1,500,000.00 bridge loan." The plaintiff also states in his affidavit that the debtor falsely advised him that the only thing a permanent lender needed was a feasibility study for due diligence purposes[3] and reiterates the allegation that the debtor misrepresented that he was

---

[3][W]hen Mr. Applegate was trying to get me to make a financial commitment to his new ART
(continued...)

9

married. In this regard, the plaintiff states in his affidavit that:

> I would not have made the loan to Mr. Applegate's company if I had known that he was divorced at the time, and he owed Toni Applegate $600,000.00. This is particularly true, because he concealed that fact from me. He went out of his way to take me to his new home and introduce me to Toni Applegate as his wife. I am a bank director in a small community bank in the county where I live. I know from my banking experience that a divorce is a "red flag" for consideration of ability to repay a loan. Divorce is classified in the banking industry as "a significant financial event."

As to the debtor's assertion regarding the lack of proof, the plaintiff argues that when all reasonable inferences are drawn in his favor as the non-moving party, "there exists sufficient evidence from which a factfinder could determine that [the plaintiff] could prove each of the four Rembert factors at trial."

The court agrees that the fact that no permanent loan was funded is insufficient standing alone to establish that no permanent loan ever existed. *See, e.g., Schubbe Resch Chiropractic & Phy. Therapy Ctrs. v. Norton (In re Norton)*, 248 B.R. 131, 134 (Bankr. W.D. Wis. 2000) (the mere fact that the debtor subsequently fails to pay is "clearly insufficient" to prove an intent to deceive; the failure to pay demonstrates only a breach of contract, not fraud). Nonetheless, the failure to perform may be considered in the context of other circumstantial evidence to establish fraud. *See In re Rembert*, 141 F.3d at 282 ("a

---

³(...continued)
project, . . . [he] told me the only thing the lender needed was a feasability study . . . . I was retained . . . to prepare the study. . . .

I concluded the feasability study on June 8, 2000 . . . .

Based upon Mr. Applegate's representation to me that his loan for permanent financing was now approved I [made the loan].

In making the loan . . . I relied on . . . his statement that the only thing the lender needed in order to approve the loan for the permanent financing was a feasibility study and his statement that the lender had approved the loan for the permanent financing.

10

debtor's intention—or lack thereof—must be ascertained by the totality of the circumstances"); *see also Donaldson v. Hayes (In re Hayes),* 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004) ("The debtor's knowledge [of the falsity] and fraudulent intent may be shown by circumstantial evidence and inferred from the debtor's course of conduct."); *Dorian v. Cornner (In re Cornner)*,191 B.R. 199, 210 (Bankr. N.D. Al. 1995) (court may consider failure to pay in context of other surrounding circumstances to find falsity and intent to deceive). The plaintiff's claim of fraud is based not only on the debtor's alleged misrepresentation of permanent financing, but also on the debtor's misrepresentation of his marital status. While the record is void of proof of the latter, other than the fact that no permanent financing was forthcoming, it is undisputed that the debtor was in fact divorced at the time the plaintiff made the loan to him. Construing this evidence and the circumstantial evidence of nonpayment in the light most favorable to the plaintiff as this court is constrained to do, *see In re Tri-City Turf Club, Inc.*, 323 F.3d at 442, this court concludes that a genuine issue of material fact exists on the issue of fraud under § 523(a)(2)(A), thus precluding summary judgment.[4]

---

[4]Although of course the plaintiff rather than the debtor has the burden of establishing nondischargeability, the court notes that the debtor has not denied the absence of permanent financing. On the other hand, while sufficient at this time to withstand the debtor's summary judgment motion, it should also be noted that thus far the plaintiff's evidence of fraud in the inception of the loan is limited. Most of the plaintiff's argument and evidence submitted in opposition to the debtor's summary judgment motion is directed to the debtor's post-loan disposition of tax refunds from the Internal Revenue Service. While relevant to the plaintiff's objection to discharge claims under § 727, they appear to have no bearing on the issue of whether the debtor "obtained" the loan from plaintiff by fraud or false pretenses. *See First Nat'l Bank in Blytheville v. Henson (In re Henson)*, 135 B.R. 346, 348 (Bankr. E.D. Ark. 1991) ("Section 523(a)(2) contemplates fraud at the time the credit is obtained."); *Nat'l City Bank, Marion v. Imbody (In re Imbody)*, 104 B.R. 830, 839 (Bankr. N.D. Ohio 1989) ("[T]he key word in § 523(a)(2) appears to be 'obtained'"; no cause of action because plaintiff failed to show that debtors had received loan as a result of deceitful or fraudulent action); 4 *Collier on Bankruptcy* ¶ 523.08 [1][a] (15th ed. rev. 2004)
(continued...)

11

Turning to the plaintiff's § 523(a)(2)(B) claim, the plaintiff must establish "that the debt was obtained by the use of a statement (1) in writing; (2) that was materially false; (3) respecting the debtor's or an insider's financial condition; (4) on which the creditor to whom the debtor is liable for money, property, services or credit reasonably relied; that the debtor caused to be made or published with intent to deceive." *In re Copeland*, 291 B.R. at 780 (citing 4 *Collier on Bankruptcy* ¶ 523.08[2] (15th ed. rev. 2002)). The debtor acknowledges that he furnished the plaintiff a financial statement, but denies that it was materially false or that plaintiff relied on the statement.

With respect to the failure to disclose his obligations to his former spouse, the debtor contends that this omission was immaterial since even if he had included the $600,000 obligation in the liabilities section of his December 31, 1999 financial statement, his net worth would still have exceeded $10 million, an amount much greater than the loan being made by the plaintiff. The plaintiff, on the other hand, as previously noted, states in his affidavit that he would not have made the loan to the debtor if he had known of the divorce since debtor went out of his way to introduce Toni Applegate as his wife, "divorce is a 'red flag' for consideration of ability to repay a loan" and "divorce is classified in the banking industry as 'a significant financial event.'"

"For the purposes of § 523(a)(2)(B)(i), a statement is materially false if it 'contains an important or substantial untruth. The measuring stick of material falsity is whether the creditor would have made the loan if the debtor's true financial condition had been known.'" *In re Copeland*, 291 B.R. at 782 (quoting

---

[4](...continued)
("For a debt to fall within [§ 523(a)(2)(A)], money, property or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations or by means of actual fraud.").

*First Nat'l Bank v. Sansom (In re Sansom)*, 224 B.R. 49, 54 (Bankr. M.D. Tenn. 1998)). A debtor's failure to list or understatement of assets or liabilities is ordinarily a misstatement considered material. *Id*. The plaintiff's statements that he would not have made the loan if he had known the debtor's true marital status and his $600,000 obligation to his former wife support a finding of materiality. *See Commonwealth Land Title Ins. Co. v. Homer (In re Homer)*, 168 B.R. 790, 800 (Bankr. N.D. Ga. 1994) (representation by the debtor that he was married was material in assessing the degree of risk the lender was taking). Accordingly, a genuine issue of fact exists on this issue, precluding summary judgment.

The plaintiff's affidavit also refutes the assertion that the plaintiff did not rely on debtor's marital status in making the loan. Section 523(a)(2)(B) requires reasonable reliance by the creditor. "'Reasonable reliance' is determined on a case by case basis, judged in light of the totality of the circumstances after an examination of all facts and circumstances." *In re Copeland*, 291 B.R. at 784. The debtor's argument regarding lack of reliance is based on the plaintiff's deposition testimony wherein he states that he did not have any specific conversations with the debtor about the financial statement and that what gave him comfort in making the loan were the profit numbers on the debtor's companies and their cash position which indicated that they had drawn down only $4.4 million on an $8.8 million line of credit. This testimony, however, does not establish that the plaintiff relied solely on the cash and profit numbers of the company, to the exclusion of the remainder of the debtor's financial statement. Furthermore, the plaintiff states in his affidavit that he relied on the assets and liabilities set forth in the statement. As such, the debtor is not entitled to summary judgment on this issue.

An additional basis for plaintiff's assertion that the debtor provided him a false financial statement is that the statement did not list an obligation of the debtor to Premier Custom Homes, LLC ("Premier").

13

The debtor asserts that he is entitled to summary judgment because there is no evidence that he owed a debt to Premier on December 31, 1999, the date of his financial statement, and therefore his financial statement was not false in this regard. To support this assertion, the debtor submits portions of his deposition testimony wherein he states he did not owe Premier. He acknowledges that Premier filed a notice of a $275,000 lien against his home on or about April 25, 2000, but states that the lien was later withdrawn after mediation without any payment. The plaintiff states in his deposition that he has no knowledge of any debt owed by the debtor to Premier as of December 31, 1999, other than the fact that Premier filed a lien in April 2000. The plaintiff's affidavit does not even address an alleged debt to Premier.

Clearly, the mere fact that Premier filed a notice of lien against the debtor's home in April 2000 does not establish that the debtor was obligated to Premier on December 31, 1999, and that consequently, the debtor's December 31, 1999 financial statement which did not list a liability to Premier was false. In the face of the debtor's express deposition testimony that he did not owe Premier a debt on December 31, 1999, it was incumbent upon the plaintiff to come forward with some proof that the debtor's December 31, 1999 financial statement was in fact false in this regard in order to withstand summary judgment. Plaintiff has not done so. Absent such proof, the existence of a debt to Premier on December 31, 1999 based solely on a lien claim filed in April 2000 would be mere conjecture. Accordingly, the court will grant the debtor summary judgment on this issue.

The last issue raised by the debtor in his request for partial summary judgment pertains to the plaintiff's assertion that the debtor's December 31, 1999 financial statement is false because it "materially overstates the value of [the debtor's] companies and real estate." The debtor asserts that he is entitled to

summary judgment on this issue because there is no evidence that any of the values are false.  In support of this assertion, he again references the plaintiff's deposition testimony which indicates that the plaintiff's only proof on this issue is his opinion that the asset values must have been false because the debtor subsequently filed bankruptcy.

> Q       Was there anything in the financial statement that looked odd to you or you did not understand that you needed a clarification about from your accountant?
> A       Prior to making the loan or prior to this date?
> Q       Well, at any time.
> A       No.  You know, the evaluations of the company in hindsight obviously were incorrect.  I mean when a company has a statement like this and a credit line availability of $4,000,000 and in a year and a half they're busted, you know, there's some real, real problems somewhere.
> Q       Did you have any discussions with Mr. Applegate or anybody else to verify or discuss any of the values listed in this financial statement prior to making your loan?
> A       No.
> Q       And the statement you just made, I think is hindsight is 20/20, correct?
> A       Yes.
> Q       And it is fair to say that values that may have later been obtained for some of these assets were less than the numbers that are put on this financial statement, correct?
> A       Yes.
> Q       Does that necessarily mean that the values or the figures listed in this financial statement are wrong at the time they're presented?
> A       Neither right, nor wrong.
>          . . .
> Q       Let's go to the first page of the financial statement, which is, I guess, Page 2.  It's the asset and liability page.  I guess, is that a balance sheet?
> A       That must be Page 3.  Yes.
> Q       Okay.  Are you able to tell me as of December 31, 1999 any of the values attributed to those assets were incorrect?
> A       I can't attest to any of the values on this today.
> Q       Does that mean you can't say if as of that time they were right or wrong?
> A       I can't even say that the percentages on Capital Plus Equities, GSA, which nobody could even find today, JAG, you know, who owns what, Pinnacle Printing, I don't know who owns that.  And this is, you know, with the use of hindsight obviously.  But I can't attest to any of this today.

In his affidavit submitted in opposition to the debtor's motion, the plaintiff states in this regard: "The

15

evidence I have that Mr. Applegate overstated the value of his assets in his financial statement, primarily his membership units of Tennessee Aluminum Casting, LLC, and Harrison Holding, LLC, which together he valued at more that $11,000,000.00 is that those entities were bankrupt less than two years and his interest in the units of those companies was worthless."

The debtor is correct that the foregoing is no proof that the asset values in the debtor's financial statement were false at the time the financial statement was given. Even the plaintiff admitted in his deposition that the fact that less amounts were subsequently obtained for these assets is inconclusive ("Neither right, nor wrong."). The plaintiff's attempt in his affidavit to retreat from this admission is ineffective since his only evidence of insufficient value remains conjecture, derived from hindsight opinion. In order to prevail against the debtor's summary judgment motion, the plaintiff must come forward with evidence supporting his assertion that the debtor's financial statement was false as to his asset valuation.[5] Having failed to satisfy this burden, the plaintiff may not prevail. Summary judgment in the debtor's favor is appropriate in this regard.

IV.

In accordance with the foregoing, the debtor's motion for partial summary judgment will be denied with respect to the allegations of misrepresenting the commitment for permanent financing and his marital

---

[5]While an inference that a financial statement is false may arise if there is a short period of time between the creation of the statement and the filing of a bankruptcy petition, a 13 month period was too remote to give rise to such an inference in *Enterprise Nat'l Bank of Atlanta v. Jones (In re Jones)*, 197 B.R. 949 (Bankr. M.D. Ga. 1996). In this case, over three years passed from the creation of the debtor's financial statement and his bankruptcy filing which provides even less a basis for drawing such an inference.

status, actionable under § 523(a)(2)(A), and the allegations of providing a false financial statement by failing to disclose liabilities from his divorce and falsely warranting that the pledged shares securing the loan were unencumbered, actionable under § 523(a)(2)(B). The debtor's motion will be granted as to all other claims under § 523(a)(2)(A) & (B). An order will be entered simultaneously with the filing of this memorandum opinion.

FILED: July 20, 2005

                              BY THE COURT

                              /s/ Marcia Phillips Parsons
                            _____
                            MARCIA PHILLIPS PARSONS
                            UNITED STATES BANKRUPTCY JUDGE